## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIAM YAHIA IBRAHEEM ISHAG, *et al.*, <br><br>                 *Plaintiffs*, <br><br>    v. <br><br> REPUBLIC OF SUDAN, <br> Ministry of Foreign Affairs <br> Republican People's Palace <br> Khartoum, Sudan <br><br>                 *Defendant*. | Case No. 21-cv-00751 (CJN) |

## STATEMENT OF POINTS AND AUTHORITIES
## IN SUPPORT OF THE REPUBLIC OF THE SUDAN'S MOTION TO
## <u>SET ASIDE THE ENTRY OF DEFAULT AND DISMISS THE COMPLAINT</u>

**WHITE & CASE**LLP

Christopher M. Curran (D.C. Bar No. 408561)
Nicole Erb (D.C. Bar No. 466620)
Claire A. DeLelle (D.C. Bar No. 974945)
Celia A. McLaughlin (D.C. Bar No. 1007891)
701 Thirteenth Street, NW
Washington, DC, 20005-3807
(202) 626-3600
ccurran@whitecase.com
nerb@whitecase.com
cdelelle@whitecase.com
cmclaughlin@whitecase.com

*Counsel for the Republic of the Sudan*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ........................................................................................................................6

I.    THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS
      ACTION ....................................................................................................................7

II.   THE COURT LACKS PERSONAL JURISDICTION OVER SUDAN........................11

III.  THE ENTRY OF DEFAULT IS VOID FROM THE OUTSET AND MUST BE
      SET ASIDE...............................................................................................................13

IV.   THE COMPLAINT MUST BE DISMISSED WITH PREJUDICE..............................15

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)..............................................................................................7

*Barot v. Embassy of the Republic of Zambia*,
785 F.3d 26 (D.C. Cir. 2015)...........................................................................12, 13

*Barot v. Embassy of the Republic of Zambia*,
11 F. Supp. 3d 33 (D.D.C. 2014).........................................................................13

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
137 S. Ct. 1312 (2017)...........................................................................................7

*Candido v. District of Columbia*,
242 F.R.D. 151 (D.D.C. 2007)............................................................................15

*Capitalkeys, LLC v. Democratic Republic of Congo*,
No. 15-cv-2079, 2020 WL 7029934
(D.D.C. Feb. 14, 2020) ..................................................................................13, 14

*Cicippio-Puleo v. Islamic Republic of Iran*,
353 F.3d 1024 (D.C. Cir. 2004).............................................................................8

*Clay v. Socialist People's Libyan Arab Jamahiriya*,
614 F. Supp. 2d 21 (D.D.C. 2009).........................................................................9

*Enka Insaat Ve Sanayi A.S. v. Gabonese Republic*,
406 F. Supp. 3d 84 (D.D.C. 2019).......................................................................13

*Garcia v. Sebelius*,
919 F. Supp. 2d 43 (D.D.C. 2013).......................................................................13

*Jackson v. Beech*,
636 F.2d 831 (D.C. Cir. 1980)............................................................................14

*James Madison Ltd. v. Ludwig*,
82 F.3d 1085 (D.C. Cir. 1994)............................................................................15

*Khochinsky v. Republic of Poland*,
1 F.4th 1 (D.C. Cir. 2021)..............................................................................14, 15

*Khochinsky v. Republic of Poland*,
No. 18-cv-1532 (DLF), 2019 WL 5789740
(D.D.C. Nov. 6, 2019).........................................................................................15

*Magness v. Russian Federation*,
   247 F.3d 609 (5th Cir. 2001) ..................................................................11

\* *Mark v. Republic of Sudan*,
   No. 20-cv-3022 (TNM), 2021 WL 4709718
   (D.D.C. Oct. 7, 2021) .................................................................. *passim*

*Phillips v. Mont. Comm'n on Character & Fitness*,
   No. 20-cv-1982 (CKK), 2021 WL 1721601
   (D.D.C. Apr. 30, 2021) ..........................................................................14

*Prac. Concepts, Inc. v. Republic of Bolivia*,
   811 F.2d 1543 (D.C. Cir. 1987)..............................................................14

*Pugh v. Socialist People's Libyan Arab Jamahiriya*,
   No. 08-5387, 2009 WL 10461206
   (D.C. Cir. Feb. 27, 2009) .........................................................................9

*Republic of Austria v. Altmann*,
   541 U.S. 677 (2004)................................................................................10

\* *Republic of Sudan v. Harrison*,
   139 S. Ct. 1048 (2019)................................................................. *passim*

*Saudi Arabia v. Nelson*,
   507 U.S. 349 (1993)..................................................................................7

*Smith v. World Bank Grp.*,
   99 F. Supp. 3d 166 (D.D.C. 2015)...........................................................13

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
   30 F.3d 148 (D.C. Cir. 1994)...................................................................12

*Verlinden B.V. v. Cent. Bank of Nigeria*,
   461 U.S. 480 (1983)........................................................................7, 8, 10

## STATUTES AND RULES

\* 28 U.S.C. § 1330(b) ...................................................................6, 11, 15

28 U.S.C. § 1605(a)(7)..................................................................3, 7, 8

\* 28 U.S.C. § 1605A ........................................................................ *passim*

\* 28 U.S.C. § 1608 ........................................................................... *passim*

Antiterrorism and Effective Death Penalty Act of 1996,
   Pub. L. No. 104-132, 110 Stat. 1214 .......................................................7

Libyan Claims Resolution Act,
 Pub. L. 110-301, 122 Stat. 2999 (Jan. 3, 2008) ........................................................9

National Defense Authorization Act for Fiscal Year 2008,
 Pub. L. No. 110-181, 121 Stat. 3 (2008)..................................................................8

* Sudan Claims Resolution Act,
 Pub. L. No. 116-260, 124 Stat. 3291 (2020)................................................... *passim*

Fed. R. Civ. P. 12(b) .........................................................................................6, 15

Fed. R. Civ. P. 55(c) .........................................................................................6, 13


# OTHER AUTHORITIES

* Claims Settlement Agreement Between the Government of the Republic of the
 Sudan and the Government of the United States of America, Sudan-U.S., Oct.
 30, 2020, T.I.A.S. No. 21-209 (entered into force Feb. 9, 2021)..................................... *passim*

* Certification Under Section 1704(a)(2) of the Sudan Claims Resolution Act
 Relating to the Receipt of Funds for Settlement of Claims Against Sudan, 86
 Fed. Reg. 19,080 (Apr. 12, 2021) ...............................................................4, 6, 9, 10

Rescission of Determination Regarding Sudan,
 85 Fed. Reg. 82,565 (Dec. 8, 2020) .......................................................................2, 4

H.R. Rep. No. 94-1487 (1976)..................................................................................7

Press Statement, Antony J. Blinken, Secretary of State, Receipt of Funds for
 Resolution of Certain Claims Against Sudan (Mar. 31, 2021),
 https://www.state.gov/receipt-of-funds-for-resolution-of-certain-claims-
 against-sudan/ ..................................................................................................4

* indicates authority on which counsel chiefly relies.

The Republic of the Sudan is a sovereign nation in northeastern Africa.  Approximately two years ago, Sudan and the United States normalized their relations after decades of estrangement and contentiousness.  Sudan now respectfully appears in this Court to assert the sovereign immunity that has been restored to it, and to which Sudan is entitled, under the Foreign Sovereign Immunities Act ("FSIA").

## PRELIMINARY STATEMENT

On October 30, 2020, following more than a year of bilateral negotiations, Sudan and the United States signed a historic Claims Settlement Agreement as an integral part of a process to normalize relations between the two countries.  Claims Settlement Agreement Between the Government of the Republic of the Sudan and the Government of the United States of America, Sudan-U.S., Oct. 30, 2020, T.I.A.S. No. 21-209 (entered into force Feb. 9, 2021) ("Claims Settlement Agreement").  This Claims Settlement Agreement, together with the rescission by the United States of Sudan's designation as a state sponsor of terrorism and Congress's enactment of the Sudan Claims Resolution Act, resolved historical terrorism-related claims against Sudan and restored Sudan's sovereign immunities to those normally enjoyed by other foreign states in U.S. courts.

In particular, the Claims Settlement Agreement, upon entry into force, (i) "settles the claims of the United States of America and, through espousal, those of U.S. nationals" against Sudan, (ii) "provides meaningful compensation in connection with claims of foreign nationals employed or performing a contract awarded by the United States," and (iii) "bars and precludes *all* U.S. national and foreign national suits and actions . . . and future suits and actions in the courts of the United States of America through legislation providing to Sudan the sovereign, diplomatic and official immunities normally provided by the United States to other states." Claims Settlement Agreement arts. II & III (emphasis added).  These provisions apply if "such

claims, suits, or actions arise from personal injury (whether physical or non-physical, including emotional distress), death, or property loss caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking or detention or other terrorist act, or the provision of material support or resources for such an act, occurring outside of the United States of America and prior to the date of execution of th[e] Agreement." *Id.*  This language tracks the requirements for the "terrorism exception" to foreign sovereign immunity in § 1605A(a) of the FSIA and the private right of action provided in § 1605A(c).

The Claims Settlement Agreement conditioned entry into force upon the enactment of U.S. legislation that (i) "provides the same sovereign, diplomatic, and official immunity to Sudan and its property . . . as is normally provided by the United States to other states and their property," and (ii) "bars and precludes all suits and actions specified in Article II" (i.e., those predicated on § 1605A(a)'s exception to sovereign immunity and § 1605A(c)'s private right of action) that are "pending in the courts of the United States of America . . . and future suits and actions specified in Article II." *Id.* arts. III(1) & V.  Therefore, a key effect of the Claims Settlement Agreement, following enactment of implementing U.S. legislation, was the restoration of Sudan's foreign sovereign immunity from jurisdiction and suit in actions brought against Sudan in U.S. courts under § 1605A of the FSIA.

On December 8, 2020, Secretary of State Michael R. Pompeo formally rescinded Sudan's designation as a state sponsor of terrorism. *See* Rescission of Determination Regarding Sudan, 85 Fed. Reg. 82,565 (Dec. 8, 2020).  Also in December 2020, Congress passed and President Donald J. Trump signed into law the Sudan Claims Resolution Act, the legislation contemplated by the Claims Settlement Agreement.  Sudan Claims Resolution Act, Pub. L. No. 116-260, 124

Stat. 3291 (2020) (codified at 28 U.S.C. § 1605A note) ("SCRA"); *see also* Claims Settlement Agreement arts. II & III(1).

Consistent with the Claims Settlement Agreement, § 1704 of the SCRA provides for the restoration of Sudan's sovereign immunity in actions brought under § 1605A upon the submission of a Certification by the U.S. Secretary of State to Congress.  Section 1704(a)(2) of the SCRA sets forth the required contents of the Certification, which include, among other things, statements that the U.S. Government has received payment from Sudan for the settlement of certain historical terrorism-based claims and has formally rescinded Sudan's designation as a state sponsor of terrorism.  Section 1704(a)(1) of the SCRA provides that, upon the submission of the Certification, Sudan "shall not be subject to the exceptions to immunity from jurisdiction, liens, attachment, and execution under . . . section 1605A" or its predecessor provision, § 1605(a)(7), and that § 1605A(c) "and any other private right of action relating to acts by a state sponsor of terrorism arising under Federal, State, or foreign law shall not apply with respect to claims against Sudan, or any of its agencies, instrumentalities, officials, employees, or agents."  SCRA § 1704(a)(1)(A)-(B).

Section 1704(b) of the SCRA establishes that, with one limited exception, the restoration of immunities set forth in § 1704(a) "shall apply to all conduct and any event occurring before the date of the" Secretary of State's Certification.  The one limited exception to the restoration of immunities pertains to claims against Sudan pending at the time of enactment in "the proceedings comprising the multidistrict proceeding 03-MDL-1570 in the United States District Court for the Southern District of New York."  SCRA § 1706(c).  The referenced "multidistrict proceeding" is a multidistrict litigation relating to the terrorist attacks on September 11, 2001.

On March 20, 2021, Secretary of State Antony J. Blinken submitted the requisite Certification to Congress, providing that the United States and Sudan had discharged their obligations under the SCRA. *See* Certification Under Section 1704(a)(2) of the Sudan Claims Resolution Act Relating to the Receipt of Funds for Settlement of Claims Against Sudan, 86 Fed. Reg. 19,080 (Apr. 12, 2021); *see also* SCRA § 1704(a)(2). Specifically, as discussed above, on December 8, 2020, Secretary of State Michael R. Pompeo had discharged the obligations of the United States by rescinding Sudan's designation as a state sponsor of terrorism. *See* Rescission of Determination Regarding Sudan, 85 Fed. Reg. 82,565 (Dec. 8, 2020). In addition, on March 11, 2021, Sudan had discharged its obligations by completing the transfer of the settlement funds to the United States pursuant to the Claims Settlement Agreement. *See* Press Statement, Antony J. Blinken, Secretary of State, Receipt of Funds for Resolution of Certain Claims Against Sudan (Mar. 31, 2021), https://www.state.gov/receipt-of-funds-for-resolution-of-certain-claims-against-sudan/.

Accordingly, upon the submission of Secretary Blinken's Certification on March 20, 2021, all of the SCRA's prerequisites were met and Sudan's immunities were restored under § 1704(a)(1) of the SCRA.

Two days later, on March 22, 2021, Plaintiffs filed their Complaint against Sudan alleging subject-matter jurisdiction under § 1605A(a) and asserting claims under the private right of action in § 1605A(c). Compl. ¶¶ 6-14, 61, 67, 77, ECF No. 1. Plaintiffs are Ms. Mariam Ishag, a Sudanese national, and Ms. Ishag's U.S.-national minor children. *Id.* ¶ 1, 3-4. The Complaint alleges that Plaintiffs suffered injuries caused by acts of hostage taking and torture undertaken by Sudanese government agents during Plaintiffs' confinement at the Omdurman

Women's Prison from December 2013 through June 2014.  *Id.* ¶¶ 60-61, 66-67, 76-77.  Sudan categorically denies the allegations against it, and expresses sympathy to the victims.

On May 4, 2021, Plaintiffs filed an Affidavit Requesting Foreign Mailing and asked the Clerk of the Court to dispatch the Summons and Complaint to the "Republic of Sudan, c/o Minister of Foreign Affairs" inexplicably at the address of Sudan's Embassy in Kuala Lumpur, Malaysia, purportedly in accordance with § 1608(a)(3) of the FSIA.  Aff. Req. Foreign Mailing, ECF No. 4.  The Clerk dispatched the service package as instructed by Plaintiffs on May 6, 2021. Certificate of Clerk Mailing, ECF No. 6.  The service package was not delivered to Sudan's Embassy in Malaysia, but, rather, was returned to the Clerk of the Court in Washington, D.C. *See* Summons Returned Unexecuted, ECF No. 7.

Plaintiffs next filed a second Affidavit Requesting Foreign Mailing seeking service on Sudan through the U.S. Department of State under § 1608(a)(4) of the FSIA.  *See* Aff. Req. Foreign Mailing, ECF No. 9.  The Clerk of the Court dispatched the service package to the U.S. Department of State on June 24, 2021.  Certificate of Mailing, ECF No. 11.  Sudan is not aware of any evidence in the record that Sudan was served through this service attempt.

Then, on October 27, 2021, Plaintiffs filed a third Affidavit Requesting Foreign Mailing initiating a further attempt at service.  *See* Aff. Req. Foreign Mailing, ECF No. 14.  Plaintiffs requested that the Clerk of the Court dispatch the service package to the "Republic of Sudan, c/o Ministry of Foreign Affairs" again inexplicably at the address of Sudan's Embassy in Washington, D.C.  *Id.*  The Clerk of the Court mailed the service package on November 2, 2021. Clerk's Certificate of Mailing, ECF No. 16.

On January 12, 2022, Plaintiffs filed a request for entry of default against Sudan, attaching purported proof of service on Sudan:  a FedEx delivery receipt apparently signed by

"C. Martir" at Sudan's Embassy in Washington, D.C.  *See* Aff. Supp. Req. for Entry of Default, ECF No. 17; *see also* ECF No. 20 (corrected docket entry).  The Clerk of the Court filed an Entry of Default on February 28, 2022.  ECF No. 21.  On December 19, 2022, Plaintiffs filed a Motion for Permission to File under Seal, attaching a Motion for Default Judgment and various exhibits.  ECF No. 22.

## ARGUMENT

Plaintiffs' claims against Sudan are not justiciable.  Before Plaintiffs filed their action, the SCRA and the Secretary of State's Certification thereunder had already restored Sudan's sovereign immunity in actions brought under § 1605A(a) and stripped Plaintiffs of the private right of action for their claims under § 1605A(c).  Accordingly, the Court lacks subject-matter jurisdiction over this action under § 1605A(a) and the Complaint fails to state a claim under § 1605A(c)'s private right of action.  *See Mark v. Republic of Sudan*, No. 20-cv-3022 (TNM), 2021 WL 4709718, at *5 (D.D.C. Oct. 7, 2021) (dismissing § 1605A action against Sudan given restoration of Sudan's sovereign immunity by the SCRA and the Secretary of State's Certification thereunder), *appeal pending*, No. 21-5250 (D.C. Cir.); SCRA § 1704(a)(1).  The Court also lacks personal jurisdiction over Sudan because Plaintiffs failed to serve Sudan with the Summons and Complaint in accordance with the strict requirements of § 1608(a) of the FSIA.  *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048 (2019) (holding service on Sudan via its embassy in Washington, D.C. insufficient under § 1608(a)); 28 U.S.C. § 1330(b).

Sudan appears now, despite not having been properly served with the Summons and Complaint, to move to set aside the Entry of Default under Rule 55(c) of the Federal Rules of Civil Procedure and to dismiss the Complaint with prejudice under Rule 12(b) on the threshold grounds that (i) the Court lacks subject-matter jurisdiction and personal jurisdiction under the

FSIA, (ii) Plaintiffs failed to properly serve Sudan with process under the FSIA, and (iii) the Complaint fails to state a claim.

**I.    THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THIS ACTION**

The FSIA is the "sole basis for obtaining jurisdiction over a foreign state" in U.S. courts. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).  Under the FSIA, a foreign state, its political subdivisions, and its agencies and instrumentalities are presumptively immune from the subject-matter jurisdiction of U.S. courts unless a plaintiff shows that an exception to sovereign immunity applies.  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488-89 (1983)); *see also Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1320 (2017) (stating the FSIA "starts from a premise of immunity and then creates exceptions to the general principle" (quoting *Verlinden*, 461 U.S. at 493)).  No exception to sovereign immunity applies here, thus this Court lacks subject-matter jurisdiction over this action.

As originally enacted in 1976, the FSIA did not contain any immunity exceptions related to international terrorism, and did not contain any private rights of action against any foreign states.  H.R. Rep. No. 94-1487, at 12 (1976) (explaining that the FSIA was "not intended to affect the substantive law of liability").  In 1996, Congress amended the FSIA to add a new terrorism exception to immunity under 28 U.S.C. § 1605(a)(7).  *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 221(a), 110 Stat. 1214, 1241. Section 1605(a)(7) created an exception to sovereign immunity in cases brought by certain victims of terrorism against designated state sponsors of terrorism that engaged in, or provided material support for, four narrowly defined acts of terrorism.  The U.S. Court of Appeals for the District of Columbia Circuit held that § 1605(a)(7) did not provide any private right of action

against a foreign state and deemed the FSIA a wholly jurisdictional statute.  *See, e.g.*, *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1033 (D.C. Cir. 2004).

On January 28, 2008, Congress amended the FSIA's terrorism exception through § 1083 of the National Defense Authorization Act.  *See* Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338-41 (2008) (codified at 28 U.S.C. § 1605A note) ("2008 NDAA").  Sections 1083(a) & (b) of the 2008 NDAA repealed the former terrorism exception under the FSIA, § 1605(a)(7), and replaced it with a new terrorism exception under a new section, § 1605A.  Like § 1605(a)(7) before it, § 1605A(a) creates an exception to foreign sovereign immunity in cases brought against state sponsors of terrorism in which:

> [M]oney damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1).  Congress also included in § 1605A(c), for the first time, a private right of action against state sponsors of terrorism for certain enumerated terrorist acts or the provision of material support for such acts.  *See id.* § 1605A(c).

The Complaint alleges subject-matter jurisdiction under § 1605A(a) of the FSIA, (Compl. ¶¶ 6-8), but this exception to foreign sovereign immunity is no longer available against Sudan.  While Sudan categorically denies the allegations against it, the Court need not reach the merits of Plaintiffs' claims because the Court lacks subject-matter jurisdiction over this action.  *See Verlinden*, 461 U.S. at 493-94 ("At the threshold of every action in a District Court against a foreign state, . . . the court must satisfy itself that one of the exceptions [to sovereign immunity] applies . . . ."); *Mark*, 2021 WL 4709718, at *2 n.5.

As explained above, on December 27, 2020, President Trump signed the SCRA into law, and on March 20, 2021, Secretary of State Blinken submitted to Congress the Certification described in § 1704(a)(2) of the SCRA.  The submission of the Secretary's Certification removed § 1605A(a) as a basis for subject-matter jurisdiction over this action.   SCRA § 1704(a)(1) (stating explicitly that Sudan "*shall not* be subject to the exceptions to immunity from jurisdiction . . . under section 1605(a)(7) (as such section was in effect on January 27, 2008) or section 1605A . . . " (emphasis added)).  This Court, therefore, may not exercise subject-matter jurisdiction in this action pursuant to § 1605A(a), and the Complaint does not invoke any other exception and no other exception applies.

In *Mark v. Republic of Sudan*, 2021 WL 4709718, this Court relied on the SCRA to dismiss another complaint against Sudan that alleged subject-matter jurisdiction under § 1605A(a).  There, this Court recognized that it is "clear from the text of the legislation" that the SCRA restores Sudan's sovereign immunity in actions brought under § 1605A(a) and dismissed the case with prejudice.  *Id.* at *2-3, 5.  This Court has likewise dismissed actions brought under § 1605A against Libya after the passage of the Libyan Claims Resolution Act — a statute that similarly resolved historical terrorism-based claims against Libya and restored Libya's sovereign immunities — because that act "divest[ed] the court of jurisdiction."  *Clay v. Socialist People's Libyan Arab Jamahiriya*, 614 F. Supp. 2d 21, 24-25 (D.D.C. 2009); *see also Pugh v. Socialist People's Libyan Arab Jamahiriya*, No. 08-5387, 2009 WL 10461206, at *1 (D.C. Cir. Feb. 27, 2009) (granting motion to vacate the district court's judgment and dismiss the action with prejudice in light of the Libyan Claims Resolution Act).  The same result is mandated here, too.

The Complaint recognizes that "Sudan is no longer designated as a state sponsor of terrorism at the time of this claim" (Compl. ¶ 7), but asserts that this Court has jurisdiction

regardless because (1) Sudan was "designated as a state sponsor of terrorism at all times described in this complaint" and (2) § 1605A provides jurisdiction where the foreign state was designated as a state sponsor of terrorism "within the 6-month period before the claim is filed." *Id.* (quoting 28 U.S.C. § 1605A(a)(2)(i)(I)). But the SCRA expressly contemplates that the restoration of Sudan's immunities operates retroactively to apply in cases concerning conduct or alleged terrorist acts that occurred before the submission of the Certification to Congress. Specifically, SCRA § 1704(b) provides that the restoration of immunities and withdrawal of the § 1605A(c) private right of action "shall apply to all conduct and any event occurring before the date of the certification described in subsection (a)(2), regardless of whether, or the extent to which, application of that subsection affects any action filed before, on, or after that date." *See also Mark*, 2021 WL 4709718, at *2.

Here, the alleged conduct giving rise to Plaintiffs' injuries occurred in 2013 and 2014 (Compl. ¶¶ 24, 28-31, 41, 46), years before the Certification was submitted to Congress. In the context of foreign sovereign immunity, courts should "absent contraindications, . . . defer to the most recent . . . decision" of the "political branches . . . on whether to take jurisdiction." *Republic of Austria v. Altmann*, 541 U.S. 677, 696 (2004) (quoting *Verlinden*, 461 U.S. at 486) (deferring to the FSIA — the political branches' "most recent such decision" — rather than "presum[ing] that decision inapplicable merely because it postdates the conduct in question"). As such, this Court should "defer to" the plain language of § 1704 of the SCRA, which expressly removes § 1605A(a) as a basis for subject-matter jurisdiction in actions that concern events occurring before the date of the Certification. *See Mark*, 2021 WL 4709718, at *2 (holding that it "is clear from the text of the legislation" that "the SCRA restores Sudan's sovereign immunity for" the *Mark* plaintiffs' action). Moreover, Plaintiffs' action does not fit within the single

exclusion from § 1704's restoration of Sudan's sovereign immunity because their action is not part of the multidistrict litigation relating to the terrorist attacks on September 11, 2001. *See* SCRA § 1706(c).

The Complaint alleges no exception to Sudan's sovereign immunity other than § 1605A(a) and, in any event, none applies. Accordingly, the Court lacks subject-matter jurisdiction over this action.

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER SUDAN

Under the FSIA, a court has personal jurisdiction over a foreign sovereign where an exception to foreign sovereign immunity applies and service of process has been properly effected under § 1608(a). *See* 28 U.S.C. § 1330(b). Plaintiffs cannot satisfy either of these personal-jurisdiction requirements. Indeed, Plaintiffs' method of service here was explicitly rejected by the Supreme Court in *Republic of Sudan v. Harrison*, 139 S. Ct. 1048 (2019). The Court thus lacks personal jurisdiction over Sudan.

Section 1608(a) "sets out in hierarchical order" four methods of serving a foreign state. *Harrison*, 139 S. Ct. at 1054; *see also Magness v. Russian Federation*, 247 F.3d 609, 613 (5th Cir. 2001) (explaining service provisions under § 1608(a) are "hierarchical, such that a plaintiff must attempt the methods of service in the order they are laid out in the statute"). The first two methods of service provided in § 1608(a)(1) and (2) are inapplicable here, so Plaintiffs must begin with the method set forth in § 1608(a)(3). Section 1608(a)(3) requires that service on a foreign state be "addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." If service cannot be achieved under § 1608(a)(3) within 30 days, then service must be made through diplomatic channels, with the assistance of the U.S. Department of State. 28 U.S.C. § 1608(a)(4).

Here, Plaintiffs erroneously assert in their Return of Service (ECF No. 20) that they have served Sudan in accordance with § 1608(a)(3) by serving Sudan care of its Ministry of Foreign Affairs at the address of Sudan's Embassy in Washington, D.C.  Service by mail sent to Sudan's Embassy in Washington, D.C. is precisely the type of service that the Supreme Court deemed improper under § 1608(a)(3) in *Harrison*.  There, the Supreme Court held that the plaintiffs' attempted service on Sudan via a mailing sent to Sudan's Embassy in Washington, D.C. was insufficient:  "Most naturally read, § 1608(a)(3) requires that a mailing be sent directly to the foreign minister's office in the minister's home country."  139 S. Ct. at 1053-54.  As a result, the Supreme Court reversed the denial of vacatur of an over-$300 million default judgment against Sudan where service did not strictly comply with § 1608(a)(3)'s requirements.  *Id.* at 1062 ("[T]he rule of law demands adherence to strict requirements even when the equities of a particular case may seem to point in the opposite direction[.]"); *see also Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015) ("When serving a foreign sovereign, 'strict adherence to the terms of § 1608(a) is required." (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994))).

Plaintiffs' method of service here is the same method of service the Supreme Court rejected in *Harrison*.  Plaintiffs' service package was "addressed and dispatched" to Sudan's Embassy in Washington, D.C. (ECF No. 14), and not "directly to the foreign minister's office in the minister's home country," *Harrison*, 138 S. Ct. at 1053.  Plaintiffs' method of service also is defective because it was not "addressed and dispatched . . . to the *head of the ministry of foreign affairs*."  28 U.S.C. § 1608(a)(3) (emphasis added).  Rather, the service package was addressed to the "Republic of Sudan, c/o *Ministry* of Foreign Affairs" (ECF No. 14 (emphasis added)), not to any person, let alone Sudan's Minister of Foreign Affairs.  *See Barot*, 785 F.3d at 29

(observing that the service package must include some "reference to the individual — whether by name or by title — who occupies the office of the head of the ministry of foreign affairs as the addressee of the package" (quoting *Barot v. Embassy of the Republic of Zambia*, 11 F. Supp. 3d 33, 36 n.1 (D.D.C. 2014))).

Because Plaintiffs' method of service on Sudan did not strictly comply with the requirements of § 1608(a)(3), this Court lacks personal jurisdiction over Sudan.

## III.   THE ENTRY OF DEFAULT IS VOID FROM THE OUTSET AND MUST BE SET ASIDE

Rule 55(c) provides that an entry of default may be set aside "for good cause" shown. The "good cause" standard is plainly met here because, among Sudan's other meritorious defenses, the Clerk's Entry of Default is void for lack of subject-matter jurisdiction and personal jurisdiction under the FSIA, and because Plaintiffs failed to serve Sudan in accordance with the strict requirements § 1608(a) of the FSIA. *See CapitalKeys, LLC v. Democratic Republic of Congo*, No. 15-cv-2079, 2020 WL 7029934, at *3 (D.D.C. Feb. 14, 2020) (granting motion to set aside default where defendant "raise[d] a potentially meritorious jurisdictional defense" based on sovereign immunity under the FSIA); *Enka Insaat Ve Sanayi A.S. v. Gabonese Republic*, 406 F. Supp. 3d 84, 90 (D.D.C. 2019) (granting motion to vacate the entry of default where defendants alleged various defenses including lack of personal jurisdiction over Gabon); *Smith v. World Bank Grp.*, 99 F. Supp. 3d 166, 169 (D.D.C. 2015) (holding entry of default "void from the outset for lack of jurisdiction" where defendant was entitled to immunity from jurisdiction) (quoting *Garcia v. Sebelius*, 919 F. Supp. 2d 43, 46 (D.D.C. 2013)); *see also Harrison*, 139 S. Ct. at 1062 (overturning default judgment against Sudan because service via Sudan's Embassy in Washington, D.C. was insufficient under § 1608(a)).

The Entry of Default also should be set aside because § 1704(a)(1)(B) of the SCRA strips Plaintiffs of their § 1605A(c) causes of action against Sudan.  *See CapitalKeys, LLC*, 2020 WL 7029934, at *3 (holding that showing a meritorious defense requires only that the defendant "has alleged colorable defenses based on the record presently before" the court).  And the other good-cause factors are met here because Plaintiffs failed to effect proper service of process on Sudan and Sudan has raised dispositive jurisdictional defenses at a preliminary stage of these proceedings.  *See, e.g.*, *Phillips v. Mont. Comm'n on Character & Fitness*, No. 20-cv-1982 (CKK), 2021 WL 1721601, at *3-4 (D.D.C. Apr. 30, 2021) (finding no willful default in light of "service defect alone" and no prejudice to plaintiffs or threat to collection of evidence in light of "dispositive jurisdictional defense").

Furthermore, the strong policy interest "favoring 'the resolution of genuine disputes on their merits,' such that 'all doubts are resolved in favor of the party seeking relief,'" *Khochinsky v. Republic of Poland*, 1 F.4th 1, 7 (D.C. Cir. 2021) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)), is especially "pronounced" when a foreign state, like Sudan here, appears "desiring to assert defenses based on its sovereign status," *Khochinsky*, 1 F.4th at 7.  *See also Prac. Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1551 n.19 (D.C. Cir. 1987) (Ruth Bader Ginsburg, J.) ("Intolerant adherence to default judgments against foreign states could adversely affect this nation's relations with other nations and undermine the State Department's continuing efforts to encourage foreign sovereigns generally to resolve disputes within the United States' legal framework." (citation omitted)).

Accordingly, the Entry of Default must be set aside as void from the outset for lack of subject-matter jurisdiction and personal jurisdiction under the FSIA.  Additionally, Plaintiffs' motion for default judgment should be denied as moot given these jurisdictional defects.  *See,*

14

*e.g.*, *Khochinsky v. Republic of Poland*, No. 18-cv-1532 (DLF), 2019 WL 5789740, at *3 n.1 (D.D.C. Nov. 6, 2019) (denying motion for partial default judgment as moot where court lacked subject-matter jurisdiction), *aff'd*, 1 F.4th 1 (D.C. Cir. 2021).

## IV.   THE COMPLAINT MUST BE DISMISSED WITH PREJUDICE

Because the Court lacks subject-matter jurisdiction over this action under § 1605A(a), the Complaint must be dismissed with prejudice under Rule 12(b)(1).  *See Mark*, 2021 WL 4709718, at *5 (dismissing complaint with prejudice); *see also James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1994) (holding that where an amendment would not survive a motion to dismiss, a court may deny leave to amend based on futility (citations omitted)).  In addition, because no exception to sovereign immunity applies and Plaintiffs have failed to properly serve Sudan with the Summons and Complaint under § 1608(a), the Complaint must be dismissed under Rule 12(b)(2) for lack of personal jurisdiction.  *See* 28 U.S.C. § 1330(b); *Harrison*, 139 S. Ct. at 1062; *Mark*, 2021 WL 4709718, at *5.  Plaintiffs' defective service also provides grounds for dismissal under Rule 12(b)(5).  *See Candido v. District of Columbia*, 242 F.R.D. 151, 162 (D.D.C. 2007) (A "Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint.").

Finally, the Complaint must be dismissed under Rule 12(b)(6) because § 1704(a)(1)(B) of the SCRA strips Plaintiffs of their § 1605A(c) causes of action against Sudan.  The Complaint alleges four counts against Sudan, contending that Plaintiffs are entitled to damages pursuant to § 1605A(c)'s private right of action.  *Id.* ¶¶ 56-80.  As discussed above, § 1704(a)(1)(B) of the SCRA provides that "any . . . private right of action relating to acts by a state sponsor of terrorism arising under Federal, State, or foreign law," including § 1605A(c), "shall not apply with respect to claims against Sudan, or any of its agencies, instrumentalities, officials, employees, or agents in any action in a Federal or State court."  Because no private right of

action is available for their claims against Sudan, Plaintiffs have no basis on which to bring their § 1605A(c) claims.

<strong><u>CONCLUSION</u></strong>

For the foregoing reasons, Sudan respectfully requests that the Court set aside the Clerk's Entry of Default against Sudan and dismiss the Complaint against Sudan with prejudice for lack of subject-matter jurisdiction, lack of personal jurisdiction, insufficient service of process, and failure to state a claim.  Sudan expressly preserves all of its rights, privileges, immunities, and defenses, including its defenses on the merits.

January 3, 2023

Respectfully submitted,

**WHITE & CASE** LLP

/s/ Christopher M. Curran
Christopher M. Curran (D.C. Bar No. 408561)
Nicole Erb (D.C. Bar No. 466620)
Claire A. DeLelle (D.C. Bar No. 974945)
Celia A. McLaughlin (D.C. Bar No. 1007891)
701 Thirteenth Street, NW
Washington, DC, 20005-3807
(202) 626-3600
ccurran@whitecase.com
nerb@whitecase.com
cdelelle@whitecase.com
cmclaughlin@whitecase.com

*Counsel for the Republic of the Sudan*